## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

BAILEY TRENT-KETTLEKAMP,

        PETITIONER,

        v.

RICHARD ADAMS,[1]

        RESPONDENT.

Case No. 22-cv-4096-NKL

## ORDER

Petitioner Trent Bailey-Kettlekamp was incarcerated in Algoa Correctional Center in Jefferson City, Missouri. On December 17, 2015, Petitioner punched another inmate, Harley Holt in the side of the head. When Holt fell to the ground, Petitioner kicked him in the head. Holt was taken into protective custody and received medical attention. Holt eventually declined additional medical care and was placed in another cell. However, Holt's mental condition quickly deteriorated, until he eventually became unresponsive. Paramedics transported Holt to the nearest trauma center in Columbia, Missouri. Holt had suffered brain injuries, and while medical professionals performed surgery, they were unable to restore brain function. Holt developed pneumonia because of his condition and died; Holt's cause of death was ruled blunt force trauma with the contributing factor of early pneumonia.

Petitioner was charged, and later convicted, of second-degree felony murder and

---

[1] Petitioner is now serving his sentences in the Eastern Reception Diagnostic Correctional Center, where Richard Adams is the Warden. Respondent argues, and Petitioner does not dispute, that Mr. Adams should be substituted as the Respondent, in David Vandegriff's place, given he is the warden with custody over Petitioner. Doc. 17, at 1. The Court agrees. Accordingly, the Clerk's Office is directed to substitute Mr. Adams as the Respondent in this case and update the case caption accordingly. 28 U.S.C. § 2254, Rule 2(a).

committing violence against a prisoner. The trial court sentenced Petitioner to concurrent sentences of twenty-five years for second degree murder and ten years for committing violence against an offender of the Department of Corrections. The conviction was upheld on appeal by the Western Division of Missouri's Court of Appeals (the "Court of Appeals"). After his conviction was affirmed, Petitioner filed a post-conviction motion in the state court. The state court denied relief, and that denial was affirmed on appeal by the Court of Appeals.[2]

Before the Court is Petitioner's Amended Petitioner for a Writ of Habeas Corpus. *See* Doc. 15. In it, Petitioner makes nine claims for federal habeas relief.

## I.  STANDARD

A federal court may grant an application for a writ of habeas corpus on a claim adjudicated in state court if the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established federal law when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

A decision is an "unreasonable application of" federal law when the state court identifies the correct legal standard or rule, but nevertheless applies it unreasonably. *Williams*, 529 U.S. at 407–08. Under this standard, "[a] state court's determination that a claim lacks merit precludes habeas relief so long as fair minded jurists could disagree." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see also White v. Woodall*, 572 U.S. 415, 426 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious

---

[2] Because Petitioner challenges the reasonableness of the Court of Appeals' decisions, the Court will discuss the substance of the state court's analysis in detail when it discusses each of Petitioner's claims below.

that a clearly established rule applies to a given set of facts that there could be no 'fair-minded disagreement' on the question."). The state court's decision must have been objectively unreasonable; it is not enough that a federal habeas court simply believes that the state court got it wrong. *Williams*, 529 U.S. at 410–11.

A federal court may also grant habeas relief if a state court's decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). While a state court's fact finding is presumed to be correct, a "state court decision that rests upon a determination of fact that lies against the clear weight of the evidence is, by definition, a decision 'so inadequately supported by the record' as to be arbitrary and therefore objectively unreasonable." *Ward v. Sternes*, 334 F.3d 696, 703–704 (7th Cir. 2003); *see also Simmons v. Luebbers*, 299 F.3d 929, 937–938 (8th Cir. 2002).

## II.  DISCUSSION

### A.  Claim One: Whether the Denial of Petitioner's Batson Challenge Justifies Relief

Petitioner first argues that the state court prosecutor used a racially motivated preemptory strike in violation of the Fourteenth Amendment of the United States Constitution. Peremptory strikes have long been a part of our jury trial system; in a criminal trial, they permit both the prosecutor and the defense counsel to remove a potential juror from the jury pool "based entirely on his or her instinct or gut feeling that an individual would not be a favorable juror." *Smulls v. Roper*, 535 F.3d 853, 858 (8th Cir. 2008). However, an attorney's discretion is not unlimited. The Supreme Court has recognized that the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor's racially motivated decision to strike a juror from the jury pool. *See Batson v. Kentucky*, 476 U.S. 79, 85–86 (1986) ("The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of

3

race."). When a criminal defendant claims that a prosecutor has used a peremptory challenge to strike a juror based on her race, courts use a three-step process to determine whether the claim has merit.

First, the defendant must make prima facie showing of racial discrimination, namely, that the prospective juror is a member of an identifiable racial minority, and that the individual was stricken because of his or her race. *Batson*, 476 U.S. at 96. Second, if such a showing is made, the burden shifts to the prosecutor to show that a racially neutral reason exists for striking the potential juror. *Id*. at 97. Third, the court must determine whether the prosecutor proffered a race neutral explanation or whether the reason given was pretextual. *Id*. at 98.

Petitioner raised his *Batson* challenge with the trial court, and then during his direct appeal. The trial court denied the challenge, and the Court of Appeals affirmed. Petitioner does not argue that the Court of Appeals applied the wrong standard. The Court of Appeals properly relied on the three-step test established by the U.S. Supreme Court in *Batson*. The Court of Appeals concluded that while Petitioner claimed that a potential juror was excluded because of his race, the prosecutor successfully identified a non-pretextual race neutral motivation for the strike. Specifically, the prosecutor struck venireperson 29, a Black man, because he, multiple times, indicated that inmates were "State property" that the state therefore has the obligation to care for them. Doc. 5-13, at 5–6. The prosecutor was concerned that venireperson 29 would rely on his beliefs about Holt's relationship with the Department of Corrections, rather than what the law requires of the DOC. *Id.* Petitioner argues that the state court's decision at step 2 and 3 - its findings that the prosecutor offered a nondiscriminatory motivation for the strike and that it was not pretextual - resulted from an unreasonable application of clearly established federal law and was based on unreasonable fact finding.

4

First, it was not unreasonable for the Court of Appeals to credit the prosecutor's explanation. *Rice*, 546 U.S. at 338, 126 S.Ct. 969 (noting that a federal habeas court can grant a § 2254 petition based on *Batson* only if it was unreasonable for the state court to credit the prosecutor's race-neutral explanations). The relationship between the DOC and Holt—specifically what that relationship required of the DOC—was at the core of Petitioner's defense, given he contended that it was the state's failure to provide appropriate medical care, not Petitioner's violence, that caused Holt's death. Petitioner countered that venireperson 29 did not misstate the law by claiming inmates were State property, but rather he relied on a colloquial way of saying that the Holt was in State custody, and the State therefore had an obligation to provide care. Regardless of whether venireperson 29 misstated the law, what matters is that the prosecutor struck him because venireperson 29 had a strong pre-conceived legal belief about which venireperson 29 "boast[ed]" several times. Doc. 5-3, at 96:2–8. Whether venireperson 29 was relying on a colloquialism or not, he several times stated pre-conceived beliefs about the DOC's obligations, and it was therefore not unreasonable to credit the prosecutor's subjective belief that venireperson 29 would bring his beliefs into the jury room, regardless of what the ultimate jury instructions said.

Of course, the prosecutor's race neutral explanation is not the end of the analysis. The "decisive question [is] whether [the prosecutor's] race-neutral explanation for [the] peremptory challenge should be believed." *Hernandez v. New York*, 500 U.S. 352, 365 (1991). In attempting to show that the prosecutor's explanation was mere pretext, the Petitioner may rely upon "all of the circumstances that bear upon the issue of racial animosity" to show purposeful discrimination. *Snyder v. Louisiana,* 552 U.S. 472, 478 (2008).

To show pretext, Petitioner argues that (1) all Back jurors were stricken form the jury and (2) the Prosecutor has a pattern of improperly striking Black jurors. The Court of Appeals did not

unreasonably reject Petitioner's first argument. As that court explained, while it is true that all Black veniremembers were stricken, the venire contained only two Black members, and Petitioner conceded to the trial court that the Prosecutor struck the second Black venireperson for a valid, race-neutral reason. Doc. 5-13, at 8; Doc. 5-3, at 98:3–5. Furthermore, the Court of Appeals noted that the prosecutor struck all potential jurors that agreed with venireperson 29's statement that inmates were state property, including those who were White. Doc. 5-13, at 8; *Cf. State v. Edwards*, 116 S.W.3d 511, 527 (Mo. banc 2003) (holding that existence of similarly situated veniremembers of a different race that were not stricken is indicative of pretext). There were no similarly situated White jurors who were not stricken by the State. Doc. 5-13, at 8. Petitioner does not challenge either finding.

Nor was it unreasonable for the Court of Appeals to reject Petitioner's argument that the prosecutor had a pattern of excluding Black veniremembers. The Court of Appeals correctly recognized that such a pattern could support a finding of pretext, but simply found no pattern of race discrimination by the Prosecutor. This was not unreasonable. To suggest a pattern, Petitioner asked the trial court to take judicial notice of three cases in which the Cole County Prosecutor's Office had stricken every Black venire member: *State v. Lester Edwards*; *State v. Lawrence Mosely*; *State v. Paris Alexander-Henderson*. The Court of Appeals concluded these cases did not demonstrate a pattern of racial discrimination, and explicitly discussed two of them.

Petitioner did not submit any materials from these cases, or cite to anything specific which demonstrates, or even suggests, that the Court of Appeals' interpretation of the proceedings was incorrect. It is the Petitioner's burden to explain why these cases establish a pattern, and why the Court of Appeals was unreasonable for failing to recognize that there was a pattern. Considering the opinion of the Court of Appeals, the information available to the Court about the three cases

cited by Petitioner, and the arguments of the Parties, it was not unreasonable for the Court of Appeals to conclude that no pattern of discrimination exists. While one of the cited cases did result in a reversal on *Batson* grounds, it was not unreasonable to conclude that one reversal did not demonstrate a pattern of race discrimination, especially when, as the Court of Appeals noted, at least one of the other cases cited by Petitioner concluded that there were no racially motivated strikes by the prosecutor. Doc. 5-13, at 8–9.

It was not unreasonable for the Court of Appeals to conclude that the Prosecutor's justification for striking venireperson 29 was valid and race-neutral, not pretext.

### B. Claim Two: Whether Petitioner's Charges for Violence Against an Inmate and Felony Murder Predicated on that Violence Constitute Double Jeopardy

Petitioner's second argument is unclear. It appears that Petitioner argued in the state courts that he could not be convicted for both felony murder in the second degree pursuant to Mo. Rev. Stat. § 556.021.1(2) and committing violence against an offender in the Department of Corrections under Mo. Rev. Stat. § 217.385 pursuant to the merger doctrine—a creature of Missouri state law.

Before this Court, however, Petitioner's argument is different. Petitioner now argues not that the Court of Appeals erred in finding Missouri's Merger Doctrine did not apply, but that Missouri's merger doctrine as interpreted by the Court of Appeals violates Petitioner's Fourteenth Amendment due process rights and therefore its decision was an unreasonable application of *Blockburger v. United States*, 284 U.S. 299 (1932). Doc. 15, at 17.

That is not the argument Petitioner made in his Motion to Dismiss the Indictment.[3] *See*

---

[3] Petitioner makes a vague reference at the end of his motion to dismiss the indictment that "the denial of this Motion would violate Mr. Trent-Kettlekamp's rights to . . . be free from double jeopardy[.]" Doc. 5-8, at 31. He did not explain how or cite any authority for that proposition in the Motion. This is not enough to properly raise the federal constitutional issue he now argues in the Missouri courts.

Doc. 5-8, at 28. Nor is it the issue Petitioner briefed to the Court of Appeals. Doc. 5-10, at 30–32. Beyond a reference in a section header, which vaguely mentions Petitioner's Fourteenth Amendment rights, Petitioner did not discuss any federal constitutional issues in his brief to the Court of Appeals, nor did he cite the case that he now argues the Court of Appeals unreasonably applied. Understandably, the Court of Appeals did not address any federal constitutional issues; it discussed only Missouri law with respect to the merger doctrine. Doc. 5-13, at 10–11. The issue Petitioner argued.

Before a federal court can consider a claim that a state prisoner "is in custody in violation of the Constitution," all available state remedies must be exhausted. 28 U.S.C. § 2254(a), (b)(1). To properly exhaust claims, a petitioner must "fairly present" the claim in state court before seeking habeas relief in federal court. *Deck v. Jennings*, 978 F.3d 578, 581 (8th Cir. 2020) (quoting *Morris v. Norris*, 83 F.3d 268, 270 (8th Cir. 1996)). "A federal habeas claim must rely on the same factual and legal bases relied on in state court*." Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). Given Petitioner never realistically gave the state courts an opportunity to address his Constitutional double jeopardy claim—indeed, he never actually *made* the argument outside of a section heading—he did not exhaust it. *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006) ("Winfield did not raise the arguments regarding the failure to call his mother Evylyn or his grandmother Delores in the state court proceedings. Because the claims of a federal habeas petitioner must rely on the same factual and legal bases relied on in state court Winfield has defaulted these particular claims." (internal citation omitted)).

Even if Petitioner's claim is not procedurally defaulted, it fails. *See* 28 U.S.C. § 2254(b)(2) (permitting federal courts to deny habeas claims on their merits, notwithstanding any procedural

default).[4] Before this Court, Petitioner argues that the Court of Appeals erroneously applied *Blockburger v. United States*, 284 U.S. 299 (1932). Petitioner argues that he cannot be convicted of both doing violence to an inmate and felony murder predicated on the violence done to the inmate that resulted in his death.

To begin, the Supreme Court has held that a state legislature may authorize cumulative punishment for the same underlying conduct. *Missouri v. Hunter,* 459 U.S. 359, 366–68 (1983). Accordingly, to take but one example from the Supreme Court, in "determining the permissibility of the imposition of cumulative punishment for the crime of rape and the crime of unintentional killing in the course of rape, the Court recognized that the 'dispositive question' was whether Congress intended to authorize separate punishments for the two crimes." *Albernaz v. United States*, 450 U.S. 333, 344 (1981) (discussing *Whalen v. United States*, 445 U.S. 684, 688 (1980)). To that end, *Blockburger* is a rule of statutory interpretation, not substantive Constitutional law. *Id.* at 340. If the legislature intended "to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* at 344. Simply because two criminal statutes may be construed to "proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Hunter*, 459 U.S. at 368.

Here, the Missouri courts have already concluded that Missouri law does not prohibit

---

[4] The Court understands Petitioner to be claiming the indictment presents a double jeopardy issue and will analyze his claim accordingly. However, to the extent he claims that the Court of Appeals' refusal to apply the merger doctrine in some other way violates his Fourteenth Amendment due process rights, that argument also fails. *See, e.g., Rhode v. Olk-Long,* 84 F.3d 284, 289 (8th Cir. 1996) (noting that court was unaware of any precedent holding that failure to apply merger doctrine would support habeas relief under due-process theory); *Tillman v. Cook,* 25 F.Supp.2d 1245, 1298 (D. Utah 1998) (rejecting due-process argument based on merger doctrine alone).

Petitioner's concurrent convictions for felony murder and assault on an inmate. This Court has no power to review the Court of Appeals' conclusions on the scope of Missouri law.[5] *Id.* And since Missouri law permits concurrent punishment for both crimes, the Constitution "authorizes cumulative punishment under [the] two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*." *Id.* at 368–69; *see also Rhode v. Olk-Long*, 84 F.3d 284, 289 (8th Cir. 1996) ("In the context of felony murder, 'a criminal defendant can be convicted of and punished for both the underlying felony and felony murder without violating the double jeopardy clause of the fifth amendment if he is prosecuted for both offenses in one trial and if the state legislature has authorized cumulative punishment.'" (quoting *Heaton v. Nix*, 924 F.2d 130, 134 (8th Cir. 1991)); *Ragland v. Hundley*, 79 F.3d 702, 704 (8th Cir. 1996) ("Double jeopardy is not implicated even when a state pursues convictions and punishment for both the underlying felony and the felony murder, so long as the defendant is prosecuted for both offenses in one trial and the state legislature has authorized cumulative punishments."); *Dodge v. Robinson*, 625 F.3d 1014, 1018 (8th Cir. 2010) ("*Blockburger* does not limit the legislative branch, which has "the substantive power to define crimes and prescribe punishments. Where [the legislature] intend[s] ... to impose multiple punishments, imposition of such sentences does not violate the Constitution." (internal citation and quotation marks omitted)); *Johnson v. Young*, 779 F.3d 495, 498 (8th Cir. 2015) ("Thus, as multiple punishment double jeopardy protection turns on legislative intent, there was no Double Jeopardy Clause violation.").

Federal law is clear that *Blockburger* is a "rule of statutory construction," not Constitutional law. *Albernaz v. United States*, 450 U.S. 333, 340 (1981). The Court of Appeals

_____

[5] And even if this Court could address the statutory issue, it seems Petitioner agrees that Missouri law *currently* does not prohibit his conviction; he simply argued that Missouri law should change. Doc. 5-10, at 29–30.

did not need to rely on it to determine the meaning of Missouri law. And because the Court of Appeals unequivocally concluded that Missouri law permits a conviction of both assault on an inmate and felony murder predicated on that assault, the Court of Appeals did not unreasonably apply federal law, or reach its decision based on unreasonable fact finding, when it determined that Petitioner's concurrent convictions do not violate the double jeopardy clause of the U.S. Constitution.

### C.  Claims Three Through Nine: Whether Counsel Was Ineffective

Petitioner claims that in various ways he was denied the effective assistance of both trial and appellate counsel in violation of the Sixth and Fourteenth Amendment of the U.S. Constitution. The Sixth and Fourteenth Amendments guarantee an accused the right to effective assistance of counsel. *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Faretta v. California*, 422 U.S. 806 (1975). This right exists both during an initial prosecution and on direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

To successfully show ineffective assistance of counsel, Petitioner must show (1) that counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and (2) that he was prejudiced by counsel's failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   To address the first element, a reviewing court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 689.  There is a strong presumption that defense counsel acted reasonably and "[j]udicial scrutiny of counsel's performance must be highly differential." *Id*.  It is Petitioner's burden to prove that counsel was deficient. *Id.*

To show prejudice, "the [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### i.     Claim Three: Failure to Raise the Sufficiency of the Evidence

Petitioner first argues that his direct appeal lawyer was ineffective for failing to argue that the state failed to prove its case.   Specifically, Petitioner argued in his state post-conviction proceedings that the state failed to prove that Holt died during the perpetration or attempted perpetration of the "predicate felony" (the attack on Holt), and that Holt's death was the "natural, reasonably foreseeable and proximate result of" Petitioner's actions.  Doc. 15, at 19.  Petitioner argued that multiple independent and intervening causes led to Holt's death, including that Holt "might have been assaulted by [another inmate]" after being assaulted by Petitioner, that Holt had a "do not resuscitate" order which prohibited life extending care, and that in various ways, prison staff failed to monitor Holt's injuries and properly treat them.  *Id.*, at 19–20.  By finding direct appeal counsel was not ineffective for failing to raise this issue, Petitioner argues the Court of Appeals unreasonably applied *Jackson v. Virginia,* 443 U.S. 307 (1979).  Petitioner argues that "A court of appeals - reviewing this sufficiency claim under *Jackson* and not under the prism of *Strickland* - would have found that the evidence was insufficient that petitioner's assault of the Holt was "a contributing proximate cause," and that other causes were the result of Mr. Holt's death."  Doc. 17, at 22.

As an initial matter, the Court of Appeals applied the correct standard.  *Strickland* governs virtually all ineffective-assistance-of-counsel claims[.]" Williams *v. Taylor*, 529 U.S. 362, 391 (2000).  *Jackson* simply establishes the standard for a federal habeas claim that argues the state

court record lacks any evidence to support conviction, in violation of the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). But such a challenge is not before this Court, nor was it before the Court of Appeals.[6] The only issue is whether the Court of Appeals unreasonably applied *Strickland* when it concluded direct appeal counsel was not ineffective for *not* raising a sufficiency-of-the-evidence challenge.

The Court of Appeals concluded that deciding not to pursue a sufficiency-of-the-evidence claim on direct appeal was a reasonable exercise of direct appeal counsel's professional judgment. Appellate counsel testified that he did not raise the issue because he believed that, under Missouri law, none of what Petitioner now calls intervening causes could successfully interrupt the causal chain started by Petitioner's assault on Holt. Appellate counsel also believed that a Missouri Supreme Court case directly foreclosed such an argument. Doc. 5-22, at 6–8 (citing *State v. Black*, 50 S.W.3d 778 (Mo. banc 2001)). The Court of Appeals, after discussing Missouri law governing causation, concluded that it was reasonable for direct appeal counsel to believe that raising such a challenge would fail under Missouri law. Doc. 5-22, at 7–10. This Court's task is simple. It must determine "whether there is 'any reasonable argument' that the state court's judgment is consistent with *Strickland*." *Williams v. Roper*, 695 F.3d 825, 831–32 (8th Cir. 2012) (quoting *Harrington*, 131 S.Ct. at 788). Here, there is such an argument. As the Court of Appeals concluded, direct appeal counsel reasonably believed that Missouri law did not support an argument that an intervening cause led to Holt 's death. Not only was that opinion based on binding Missouri Supreme Court caselaw, but it was subsequently affirmed by the Court of Appeals. This Court cannot review the Court of Appeals' conclusions concerning Missouri law, and it was reasonable

---

[6] For example, Petitioner does not raise the underlying Constitutional claim in this Court and argue that the ineffective assistance of direct appeal counsel establishes cause to overcome his apparent procedural default.

for the Court of Appeals to conclude that counsel was not ineffective for failing to raise a sufficiency-of-the-evidence challenge that was destined to fail. At bottom, the Court of Appeals was obligated to apply *Strickland* to Petitioner's claim, and it did not do so unreasonably. Nor has Petitioner identified any issue with the Court of Appeals' fact finding.

Especially considering the extreme burden faced by habeas petitioners raising an ineffective assistance of counsel claim, Petitioner is not entitled to habeas relief on this basis.

### ii. Claim Four and Five: Failure to Challenge Trial Court's Treatment of Dr. Adelstein's Testimony

At trial, defense counsel objected to several aspects of testimony from Dr. Edward Adelstein, the medical examiner who performed Holt's autopsy. First, defense counsel objected to Dr. Adelstein discussing the treatment of a person with a brain injury. Petitioner's trial counsel argued that Dr. Adelstein was testifying beyond his expertise by testifying to the treatment of a living patient, given he was a medical examiner, not a treating physician. The trial court overruled the objection, and direct appeal counsel did not raise the issue. Post-conviction counsel argued in state post-conviction proceedings that failing to raise the trial court's error was ineffective assistance by direct appeal counsel. The Court of Appeals affirmed the post-conviction court's conclusion that direct appeal counsel was not ineffective, reasoning that the testimony was admissible under Missouri law, and direct appeal counsel was not ineffective for refusing to make a claim that lacks merit.

Defense counsel also objected to the prosecutor asking Dr. Adelstein whether it would be wrong to suggest that corrections officers caused Holt's death. Trial counsel argued that the question called for a legal conclusion and invaded the province of the jury. The trial court overruled the objection. The post-conviction court concluded that refusing to challenge this issue on direct appeal was not ineffective assistance of counsel, and the Court of Appeals affirmed. The

Court of Appeals concluded that under Missouri law, while an expert may not ultimately opine that a defendant is guilty of the crimes charged, an expert may provide an opinion on causation. The Court of Appeals once again concluded that any appeal on this point lacked merit, so direct appeal counsel was not ineffective for choosing not to pursue the argument. Doc. 5-22, at 11–12.

This Court has no power to address the Missouri courts' application of Missouri law; that includes Missouri's evidentiary rules. *See Schleeper v. Groose,* 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law."). Because the Court of Appeals concluded during post-conviction proceedings that Dr. Adelstein's testimony was admissible under Missouri's evidentiary rules, direct appeal counsel was not ineffective under *Strickland* for deciding not to challenge the trial court's evidentiary rulings. *See Rainer v. Kelley*, 865 F.3d 1035, 1045 (8th Cir. 2017) (denying petitioner's ineffective assistance of counsel for failure to challenge evidentiary ruling because, the "evidence was properly excluded under Arkansas law [according to the Arkansas Supreme Court], and therefore counsel could not have been ineffective for failing to renew the issue or raise it on appeal."); *Skillicorn v. Luebbers*, 475 F.3d 965, 974 (8th Cir. 2007) (concluding that counsel was not ineffective for failing to elicit testimony that the Missouri Supreme Court had already concluded was inadmissible during post-conviction proceedings); *Dodge*, 625 F.3d at 1019 (finding counsel's failure to raise a meritless claim during trial could not constitute ineffective assistance).[7]

In deciding that neither of Petitioner's claims with respect to Dr. Adelstein's testimony had merit, the Court of Appeals did not unreasonably apply federal law, and there is no indication that the Court of Appeals' determination was based on unreasonable fact finding. Petitioner is not

---

[7] Petitioner argues only that the state court's decisions with respect to Dr. Adelstein's testimony were incorrect; he does not argue the evidentiary rulings impacted or violated another federal Constitutional right.

entitled to habeas relief on either claim.

### iii. Claim Six: Failure to Challenge Trial Court's Treatment of Testimony by Nicole Massman

Nicole Massman worked as a nurse for the Missouri Department of Corrections, and she testified during Petitioner's trial. On direct examination defense counsel asked Ms. Massman how the Department of Corrections responded to Holt's head injury. Doc. 5-22, at 12–13. On cross examination, the prosecutor asked Ms. Massman about her experience treating other head injuries while working for the Department of Corrections. She indicated that she responded to hundreds of head injuries, and one had resulted in a brain bleed and that individual had ended up in a vegetative state even though that individual immediately received medical attention. *Id.* Trial counsel objected to the relevance of this testimony. The trial court permitted the testimony, reasoning that trial counsel opened the door by suggesting that Department of Corrections staff could have responded to Holt's injury differently. The ruling was not challenged on direct appeal.

Petitioner claims the decision not to challenge this ruling was ineffective assistance, and the Court of Appeals unreasonably applied *Strickland*—and based its decision on unreasonable fact finding—when it denied Petitioner's claim. Direct appeal counsel testified that he might not have raised the claim because he did not think Petitioner's case was prejudiced or impacted by Ms. Massman's testimony. The post-conviction court agreed, finding that not challenging this rule was reasonable appellate strategy, and that there was no reasonable probability that the argument would lead to Petitioner's conviction being reversed.[8] The Court of Appeals affirmed, reasoning that

---

[8] This Court must presume that counsel's decision was strategy; it is for Petitioner to prove otherwise. *See generally Black v. Falkenrath*, No. 2:21-4207-NKL, 2022 WL 18024804, at *6 (W.D. Mo. Dec. 30, 2022). Accordingly, the Court of Appeals was not unreasonable for accepting direct appeal counsel's testimony that he "might" not have challenged the ruling because he did not think it would harm Petitioner's case.

given the evidence that Petitioner assaulted Holt was overwhelming, trial counsel's strategy to implicate the Department of Corrections as the actual cause of Holt's death was reasonable. The Court of Appeals also reasoned that admission of the testimony did not prejudice Petitioner.

Petitioner has not met his burden to prove that the Court of Appeals unreasonably applied *Strickland* or based its decision on unreasonable fact finding. Even assuming the Court of Appeals was wrong that the decision not to appeal the evidentiary ruling was strategic, Petitioner's offers no evidence that he was prejudiced. To attempt to do so, Petitioner claims that the testimony "made the jury believe that the same procedures that were followed with other inmates [were used] with the victim." Doc. 30, at 12–13. Even if this Court thought that were true, it was not *unreasonable* for the Court of Appeals to conclude that such a belief did not prejudice Petitioner's case. This argument does not entitle Petitioner to habeas relief, and therefore Petitioner's claim is denied.

### iv. Claim Seven: Failure to Request a Change of Venue

Petitioner argues that his trial counsel was ineffective for failing to file a motion for a change of venue. Petitioner claims that he was entitled to a change of venue because there had been pretrial publicity about his case and because many corrections officers live in Cole County, one of whom served as a juror. The Court of Appeals determined that under Missouri law, neither contention justified a change of venue in this case.[9] First, the Court of Appeals reasoned that to

---

[9] Petitioner notes that the post-conviction court relied upon trial counsel's testimony that filing a change of venue motion might have negatively impacted trial counsel's pending speedy trial motion. Doc. 15, at 30–31. The Court of Appeals did not base its decision on this reasoning; it decided that any change of venue motion would have been meritless, not that counsel had a strategic reason not to make one. For that reason, even if it was erroneous for the post-conviction court to conclude that trial counsel made a strategic decision not to make a motion—a decision this Court need not make—since that reasoning was not adopted by the Court of Appeals, it does not support habeas relief.

grant a change of venue motion, the record must demonstrate that the inhabitants of the county are so prejudiced against the defendant that a fair trial cannot occur there. Doc. 5-22, at 14 (quotation omitted). While the record suggests—from Petitioner's own testimony—that there had been some pretrial news coverage of the crime or criminal proceedings, there was no evidence that any member of the venire, let alone a member of the jury that was ultimately selected, had heard of, or seen any news coverage about, Petitioner's case. *Id.*, at 14–15. What's more, as the Court of Appeals noted, the one Department of Corrections employee to be seated on the jury was not challenged by the Petitioner. Second, the Court of Appeals concluded that Petitioner's unsupported argument that "an inordinate number" of Department of Corrections employees live in Cole County would have been insufficient to justify a change of venue. *Id.*, at 15. Petitioner does not suggest how these conclusions were wrong, let alone unreasonable. It is his burden, and he has failed to meet it.[10]

The Court of Appeals concluded that, as a matter of Missouri law, a motion for a change of venue would have been denied, and this Court has no authority to second guess that conclusion. Counsel is not Constitutionally ineffective when they "fail" to bring a claim based on state law when the state's appellate courts have already concluded that the claim lacks merit. *See, e.g.*, *Dodge*, 625 F.3d at 1019 (finding counsel's failure to raise during trial a claim that the state courts subsequently determined to be meritless during appellate proceedings could not constitute ineffective assistance for the purposes of federal habeas relief); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

---

[10] Nor does Petitioner explain how the failure to request a change of venue prejudiced him. The Court of Appeals concluded it did not, Doc. 5-22, at 15, and Petitioner offers no rebuttal. Accordingly, even if this Court could move beyond *Strickland*'s first step, the Court of Appeals did not unreasonably apply *Strickland*—or base its decision on unreasonable fact finding—when it concluded that Petitioner was not prejudiced.

determinations on state-law questions.").

Counsel was not constitutionally defective for failing to request a change of venue; this argument does not support habeas relief.

  **v.**  **Claim Eight: Decision to Concede that Petitioner Assaulted Holt**

In his opening statement at trial, defense counsel conceded that Petitioner—unprovoked—punched, and then kicked, Holt, another inmate, and affirmatively asked the jury to find Petitioner guilty of the crime of violence against an inmate. Doc. 15, at 32. He repeated the sentiment in closing argument. This, testified trial counsel, was all part of a strategy to fight the felony murder charge, for which trial counsel believed there was a weaker case compared to the assault, which Petitioner had admitted committing and was caught on tape. Doc. 5-22, att 16–18. The post-conviction court rejected the claim, and the Court of Appeals affirmed. The Court of Appeals concluded that conceding guilt to the underlying felony, the violence against Holt, was a reasonable trial strategy. Petitioner claims the Court of Appeals was unreasonable because trial counsel did not discuss this strategy with him, and that "without being found guilty of [the underlying violence against Holt], Petitioner could not have been found guilty of felony murder." Doc. 30, at 14.

The Court of Appeals was not unreasonable in its fact finding or its application of federal law. As an initial matter, Petitioner's claim has two components, one "structural" and one falling under *Strickland*'s familiar standard. *See, e.g.*, *United States v. Felicianosoto*, 934 F.3d 783, 786 (8th Cir. 2019) (stating that disregarding client's wishes with respect to conceding guilt is a structural error); *McCoy v. Louisiana*, 138 S. Ct. 1500, 1510–11 (2018) (distinguishing a "structural" Sixth Amendment challenge from an ineffective assistance of counsel challenge). The "structural" component addresses counsel's decision to concede guilt without discussing the

decision with his client. By "block[ing the defendant's right to make the fundamental choices about his own defense," counsel infringes upon a defendant's constitutionally protected autonomy to control his own defense. *McCoy*, 138 S. Ct. at 1511. This violation is independent of the right to competent counsel. *Id.*

As the Court of Appeals noted, Petitioner did not challenge the "structural" component—that trial counsel did not discuss the decision to concede he committed violence against Holt with Petitioner—in his initial post-conviction motion; he did not raise the issue until he appealed the post-conviction court's denial of relief. The Court of Appeals considered that argument waived, citing a decision of the Missouri Supreme Court. Doc. 5-22, at 18. This was an independent and adequate state law justification for the denial of any challenge to trial counsel's decision to concede guilt without discussing it with Petitioner—the so called "structural" challenge.[11] *Walker v. Martin*, 562 U.S. 307 (2011) (discussing independent and adequate state law grounds for denial); *see also, generally Haynes v. Cain*, 298 F.3d 375, 384 (5th Cir. 2002) (Dennis, J. concurring) ("Under these circumstances, Haynes either waived his self-representation claim [that counsel conceded guilt without authorization] or failed to properly raise and preserve it for our [habeas] review. In either case, a reversal of his conviction on the theory that he has suffered a violation of his Sixth Amendment right to self-representation is unwarranted based on the record designated for our review."). For that reason, the Court need not review the Court of Appeals' independent denial on the merits.

The Court of Appeals did not act unreasonably by rejecting Petitioner's separate argument

---

[11] As the Court of Appeals recognized, trial counsel *did* discuss with Petitioner his ultimate strategy: to suggest to the jury that, despite Petitioner's assault of Holt, someone, or something, else caused Holt's death. Petitioner agreed. It seems beyond clear that by agreeing to this strategy, Petitioner effectively agreed to concede his guilt to the assault on an inmate charge.

addressing trial counsel's competence—that trial counsel's decision to concede that Petitioner attacked Holt was ineffective. Conceding guilt to one charge for which the evidence is much stronger to gain an advantage on the remaining charges, has long been blessed as a reasonable trial strategy. *See Holder v. United States*, 721 F.3d 979, 989 (8th Cir. 2013); *Lingar v. Bowersox*, 176 F.3d 453, 459 (8th Cir. 1999) ("[W]e conclude the decision to concede guilt of the lesser charge of second-degree murder was a reasonable tactical retreat rather than a complete surrender.").[12] Conceding an indefensible charge is thought to build credibility with a jury by acknowledging the overwhelming evidence of guilt for that particular charge, creating goodwill and trust that can be used when attacking the remaining charges. *See United States v. Simone*, 931 F.2d 1186, 1196 (7th Cir. 1996) ("[W]hen the admissions concern only some of the charges to be proven, or when they do not actually concede guilt, counsel's concessions have been treated as tactical retreats and deemed to be effective assistance."). [13] As the Court of Appeals reasoned, Petitioner was on camera punching and kicking Holt. Not only that, but Petitioner also admitted that he did it. It was not unreasonable to conclude that a prudent strategy in this situation would be to intentionally pick which battles to fight. Here, it was not unreasonable to focus on what happened *after* Petitioner

---

[12] *United States v. Wilks*, 46 F.3d 640, 644 (7th Cir. 1995); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991); *United States v. Williamson*, 53 F.3d 1500 (10th Cir. 1995).

[13] *Wilks*, 46 F.3d at 644 ("In conceding Wilks's guilt with respect to the one ounce transaction [but not a different transaction involving larger drug quantities], counsel lent credibility to his argument that Wilks was only a small fish in the drug world."); *United States v. Tabares,* 951 F.2d 405, 409 (1st Cir. 1991) ("[C]ounsel's concession was a tactical decision, designed to lead the jury towards leniency on the other charges and to provide a basis for a later argument (to the judge) for a lighter sentence. Such 'tactical retreats' are 'deemed effective assistance.'" (quoting *Simone,* 931 F.2d at 1196)); *Parker v. Head,* 244 F.3d 831, 840 (11th Cir. 2001) (Using the deferential standard applicable to review of state habeas finding, upholding the state habeas court's finding that "the evidence failed to support Parker's claim of ineffective assistance of counsel, given counsel's testimony that the concession during opening statement and closing argument was a strategic decision made in consultation with Parker in light of Parker's admissible confession, in order to maintain credibility with the jury for sentencing purposes.").

punched and kicked Holt—between the time Holt initially received help from Department of Corrections staff and his death—rather than attempt to convince the jury that a crime, admitted to by the Petitioner and caught on tape, never happened. This strategy could reasonably be seen as preserving credibility with the jury and presenting a more persuasive case to defeat the felony murder charge. What's more, given the overwhelming evidence that Petitioner did in fact attack Holt, it was not unreasonable to conclude that this strategy was Petitioner's best hope of avoiding conviction and a lengthy sentence on the felony murder charge.

Analyzing the issue from the deferential position of a federal habeas court, it was not unreasonable for the Court of Appeals to consider trial counsel's decision to concede that Petitioner committed violence against Holt as a strategic retreat, not an abandonment of the fight. Just because the tactic ultimately did not work does not mean it was unreasonable to try. This argument ultimately does not justify habeas relief, and this claim is therefore denied.

### vi.    Claim Nine: Decision Not to Call Expert

Petitioner admits that his final claim—that trial counsel was ineffective for choosing not to call an expert to address the medical cause of Holt's injuries—is procedurally defaulted. Doc. 15, at 37. Normally, the Court must dismiss a procedurally defaulted claim. *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009) (citation omitted). However, a petitioner may overcome procedural default if he can demonstrate "cause" to excuse the procedural defect and "actual prejudice." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012) (citing *Coleman*, 501 U.S. at 750).

Typically, the mistakes of counsel will not suffice to establish cause to excuse a procedural default. *Coleman*, 501 U.S. at 753. However, a limited exception exists when a petitioner also suffered defective assistance of post-conviction counsel, and the post-conviction proceeding was the first opportunity the petitioner had to raise the ineffective assistance of trial counsel. *Harris v.*

*Wallace*, 984 F.3d 641, 648 (8th Cir. 2021) (citations omitted); *see also Martinez*, 566 U.S. at 14. Thus, for a federal habeas court to consider Petitioner's claim of ineffective assistance of *trial* counsel, he must also prove that his *post-conviction* counsel was constitutionally defective. This is colloquially called a *Martinez* claim. To prove a *Martinez* claim, Petitioner historically had to show "(1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" amounted to there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the "initial" review proceeding with respect to the ineffective-assistance-of-trial-counsel claim. *Marcyniuk v. Payne*, 39 F.4th 988, 995–96 (8th Cir. 2022) (citation omitted). The Court looks to the familiar *Strickland* standard to evaluate the performance of both trial and post-conviction counsel. *Martinez*, 566 U.S. at 14. This means that to show ineffective assistance of counsel in violation of the Sixth Amendment, Petitioner must demonstrate both that his lawyers' performance was unreasonable and that he was prejudiced by his lawyer's unreasonable performance. *Id.*

Petitioner claims that post-conviction counsel was ineffective for failing to properly investigate and develop a claim that Petitioner's trial counsel should have called an expert to rebut the medical examiner's testimony regarding causation and to prove that intervening causes were the actual cause of Holt's death. The record is silent as to why trial counsel did not call an expert witness; understandably, given the claim was not raised during state post-conviction proceedings. Petitioner may not explore counsel's justification for doing so now. A federal habeas court may not hold an evidentiary hearing to supplement the state court record, even in a *Martinez* claim. *Black v. Falkenrath*, No. 2:21-4207-NKL, 2022 WL 18024804, at *4–5 (W.D. Mo. Dec. 30, 2022) (citing *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022)). *Shinn* fundamentally changed the ways federal courts process *Martinez* claims. For that reason, federal courts have flipped the once-

standard analysis: first, the Court determines whether, on the state court record, a petitioner's underlying habeas claim has merit. Then, if necessary, the Court addresses whether that claim can overcome the procedural default. *Id.* (citing *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723 (3d Cir. 2022)). That means that Petitioner must rely on the record now before the Court to prove that trial counsel was ineffective for failing to call an expert. Looking to only that evidence, he cannot.

"[C]omplaints of uncalled witnesses are not favored . . . because allegations of what the witness would have testified [to] are largely speculative." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (citation omitted). "[T]he petitioner ordinarily should . . . demonstrate, with some precision, the content of the testimony they would have given at trial." *Lawrence*, 900 F.2d at 130 (quotation omitted). What's more, the court "should avoid the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quotation omitted).

First, it is not clear what testimony Petitioner thinks an expert would have provided. He merely claims that trial counsel was ineffective for failing to find an expert to rebut the prosecutor's theory that Petitioner's violence ultimately caused Holt's death. It is not clear that such an expert *exists*. It may well be that trial counsel looked for an expert and found that no one could corroborate an intervening cause argument. *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (explaining that, on a silent record, there are numerous reasons why an attorney might not call an expert). Indeed, perhaps it was counsel's reasoned judgment that poking holes in the prosecutor's expert was a better path, rather than risk presenting a flimsy rebuttal theory to a jury. This court must presume that counsel's actions were strategy, and at least on the record before the Court,

there are reasonable explanations for not calling an expert to support Petitioner's case. *Black*, 2022 WL 18024804, at \*\*6–7 (explaining that, absent evidence, the Court must presume trial counsel's actions were motivated by a strategic motivation, and it is for a petitioner to rebut that presumption).

Even assuming trial counsel was ineffective, Petitioner cannot prove prejudice. Petitioner must show that the missing testimony "would have probably changed the outcome of the trial." *See Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990); *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994). Here, as a matter of Missouri law, it could not have. Even if an expert opined that the intervening causes contributed to Holt's death, or even caused it, that evidence could not exonerate Petitioner.[14] As the Court of Appeals reasoned when rejecting Petitioner's challenges relating to the denial of his sufficiency-of-the-evidence motion, controlling Missouri law dictates that when an underlying felony is a *contributing* proximate cause, even if other causes may have intervened, Petitioner is guilty of felony murder under Missouri law. Doc. 5-22, at 6–8. "The ultimate question is whether the underlying felony set into motion the chain of events that caused the death." *Id.* (quoting *State v. Balbirnie*, 541 S.W.3d, 702, 708 (Mo. App. W.D. 2018)). The Missouri courts have already concluded that the so-called intervening causes identified by Petitioner do not relieve Petitioner of liability for Holt's death as a matter of law. Adding more evidence—this time from an expert—to support those intervening causes will do nothing to change that conclusion.

---

[14] Petitioner also argues that a possible assault from another inmate could have been an intervening cause. There is no evidence that such an assault happened. Petitioner does not explain how an expert could have further substantiated that Holt was assaulted a second time, or that those injuries, rather than those sustained from Petitioner, caused his death. It is Petitioner's burden to show that counsel was ineffective, and without more, the Court simply cannot say that it was unreasonable for an attorney to proceed without an expert supporting this theory.

Because Petitioner cannot establish his underlying ineffective assistance of counsel claim, this Court need not discuss procedural default. Petitioner has failed to meet his burden, and this claim for habeas relief is denied.

### D. Certificate of Appealability

Finally, the Court considers whether a certificate of appealability should be issued in this case. "A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In other words, such a certificate may issue if the petitioner has shown "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks and citation omitted). For the reasons stated above, and given the high standard applicable in such cases, the Court concludes that Petitioner has not shown that reasonable jurists could debate whether the petition should have been decided differently or that the issues in the case were adequate to deserve encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

### III.    CONCLUSION

As the Court has just explained, Petitioner has failed to meet his burden on any of his claims for habeas relief. For that reason, his Petition for Habeas Corpus, Doc. 15, is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 2, 2023
Jefferson City, Missouri